IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CYNTHIA JO JACOBS,

Plaintiff,

v.

HEBIBAOYUEJIANCAIYOUXIANGONGSI, ZHENGZHOUNUANJINGSHANGMAOYOUXIANGONGSI, SOLE PROPRIETORSHIP OF CHENGHAN TRADING COMPANY IN FUSUI COUNTY, CUENONG, ZL-WALLART, NORCORDS, VINWY, BEIJINGYIPINTANGSHANGMAOYOUXIANGONGSI, WQYBCV, ANQINGRONGZHONGSHANGMAOSHANGHANG(GERENDUZI), HAERBINQIAOSHAXIUSHANGMAOYOUXIANGONGSI, TONGYUJIASHANGMAOYOUXIANGONGSI, XIANGYANSHANGMAO, HAIYANGYUXIANGSHUICHANYOUXIANGONGSI, LUOXIAOLONG81, JINGYINGWANGLUOKEJIZHONGXIN, RUNNASM, LINYUANLVHUAGONGCHENG, CENGBO875, JINBOLULIN, ZHIJIANGSHIPIAOXUEGEBAIHUODIAN, BOHAOTECH, SONGHENG, NANHAO, AMAGICAL, CHENWEBBINDEXIAODIAN, XIAO YONG SHANGMAO, DAZARO STORE, XULIGHT, HENGGG, ZHANGTINGGANG63, WANGJIEFEIMAOSHANGWEN33, SUNHAODONGMAIXIGUA, LIRENDEXIAODIAN, TOPSIN ONLINE, NINGGUOCHENGBOBOWANGLUOKEJIZHONGXINGERENDUZI, XIXIANXINQUQINHANXINCHENGLEIHUAYUBAIHUODIAN, CHUZHOUSHIHUSHAOBODIANZISHANGWUSHANGHANG, KMNOVO, TYPRUYE, QUANGQUANG145, GUANGZHOUXIAOTUOSHANGMAO,

Case No. 25-cv-1196

**FILED UNDER SEAL**

OHZOLLAN, YUYAOHOUSEHOLDPAPER, TAPESB, CUSTOM ART GLOBAL STORE, XIHUANGMAOYI, HOU YULONGWIRELESS, PANKO SHOP, DINGQIANGMY21, WEIWEICAMERAS, JINANCHEYUNLINKEJIZIXUN, SHUOYU CO. LTD, BENYANG TOYS STORE, HEFEIGAILINGDIANZISHANGWU, YUTING, PERCIOUS HOME, DICILLY HOME SUPPLIES, ONE ALKYNE, SHINING SHOWROOM, SHANGMUM ART, ANJUA ART, NORDINGSHAN ART, CANVASARTT, BEAUTIFUL CANVAS PAINTING SHOP, WAWAW, HONGQJ WALL ART, PL WALL ART, JJJ WALL DECOR, LENG WALL ART, OCT WALL ART, YANZI WALL ART, AI ART DECOR, CANVASTIQUE, GRUWANS HOME, DUOFU SELLER, DANIFY, CHIC ARTWORKS, XUKAIJIEART, FUNNY HOME DECOR GIFT, QINGLONG ART POSTER S, JIEJIEPOSTER, GQQ DECORATIVE PAINTINGS AND POSTERS, XHY DECORATIVE PAINTINGS AND POSTERS, WWM DECORATIVE PAINTING POSTER, TQTX DECOR, XINMI IMP, MERA DECORATION, HOMEPART, GG WARM HOME, ZSRXMF, CENDIY, CREATIVEHAVEN, TULIP VIBES, AWESOME SELECTION - LOVE HQ, DO ZZH, ZHANS HOME TEXTILES LOCAL, ZJYWCJA, MAIQI HOME DECORATION, MEETOO STUDIO, NAIS HOME TEXTILE, ZHIH HOME TEXTILES LOCAL, SJONE, LAIZONGSHOP, HULY, TIN SIGN PAINTING, LIN DECORATIVE PAINTING THREE, METALLICMEMORIES, MODERNLIFE, COZY MAT HOUSE, OPENNESS, HOME LIFE FOR U, HONEY HOME PILLOW, LOVELY MU, QISHANS DREAM, HAPPINESS XIAOHETAO, SHENGGEJIAJU, HONGXIA SHOP, RYKEBELLA, LITTLE YELLOW DUCK LIFE HOUSE, LOVETTE HOME, XUANYIYUNCHUANG, METAL SKETCH

GALLERY, FRAMED CANVAS, AGEOO, TIN TREASURES GALLERY, ARTICAL ZOO, FAMILY ARITIST, HEMINGTONGE, ASDFDSG, WALL DECOR CANVAS POSTER, XZ ART SHOP, GOLDEN RETRIEVE, HONGLONG CULTURAL I, MANHE FA, HD ART SHOP, SUSU ART SHOP, KADINGG, HUIYAING, PAINTING STUDIO SUXX, POISING, KARINAGARDEN, BJGARDENDECOR, HUNDRED CAOTUAN HERBAL, HOLIDAYGARDENDECOR, AMERICAN STYLE CURTAIN, HANSHE HOME LIFE, DAILY NECESSITIES, NOKES, and YISHENG HOME LIFE MUSEUM,

Defendants.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the Caption, which are set forth in **Schedule "A"** hereto (collectively "Defendants"). All Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling infringing versions of Plaintiff's copyrighted works (the "Infringing Products") on the Amazon.com, Walmart.com, and Temu.com online marketplaces, operating under the seller identities and/or the online marketplace accounts as set forth on **Schedule "A"** hereto (the "Seller IDs" and collectively, the "Defendant Merchant Storefronts"). In support of its claims, Plaintiff alleges as follows:

**NATURE OF ACTION**

1. Plaintiff is the owner of a United States Registered Copyrights which are infringed by Defendants. Each Defendant has infringed at least one of Plaintiff's Registered Copyrights. Below is a side-by-side comparison of Plaintiff's copyrighted works and an example of Defendants' products that embody Plaintiff's copyrighted works:

| Reg. Number | Title of Work | Copyrighted Work | Defendants' Image |
|---|---|---|---|
| VA 2-424-842 | Daisy Ball jars-original |  |   Def #1-26, 44-53, 59-120 |
| VA 2-424-839 | CIN1669 – Love Gathers Here |   |  Def #27-43, 54-58, 121-150 |

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

3. This Court has personal jurisdiction over each Defendant because they have purposefully directed and expressly aimed their tortious activities at the Commonwealth of Pennsylvania and established sufficient minimum contacts with Pennsylvania by, among other things, upon information and belief, advertising and selling infringing products bearing Plaintiff's copyrighted designs to consumers within Pennsylvania through a highly interactive commercial website, through the regular course of business, with the knowledge that Plaintiff is harmed in Pennsylvania as a result of Defendants' sales of infringing products to Pennsylvania residents.

Plaintiff's claims arise out of and relate to Defendants' sales of infringing products bearing Plaintiff's copyrighted designs to Pennsylvania residents through the regular course of business. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

4. Personal jurisdiction over a non-resident of the state in which the Court sits is proper to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to § 5322 of the Pennsylvania Consolidated Statutes, Title 42, (the "Pennsylvania Long Arm Statute") which provides in pertinent part:

> (a) **General Rule.** A tribunal of this Commonwealth may exercise personal jurisdiction over a person … who acts directly or by an agent, as to a cause of action or other matter arising from such person:
>
> > (1) Transacting any business in this Commonwealth [including, but not limited to:]…
> >
> > > (i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
> > >
> > > (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
> > >
> > > (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.
> > >
> > > (iv) The engaging in any business or profession within this Commonwealth.
> >
> > * * *
> >
> > (3) Causing harm or tortious injury by an act or omission in this Commonwealth.
> >
> > (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

> * * *
>
> (10) Committing any violation within the jurisdiction of this Commonwealth of any statute … or rule or regulation promulgated thereunder by any government unit.
>
> (b) **Exercise of full constitutional power over nonresidents.** In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa. Cons. Stat. § 5322.

5. The Pennsylvania Long Arm Statute confers personal jurisdiction over the Defendants because Defendants regularly conduct, transact, and/or solicit business in Pennsylvania and in this Judicial District and, upon information and belief, derive substantial revenue from their business transactions in Pennsylvania and in this Judicial District. Defendants have availed themselves of the privileges and protections of the laws of Pennsylvania, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. Defendants should reasonably expect that their actions in and outside of Pennsylvania would subject them to legal action in Pennsylvania and this Judicial District. For example:

a. Defendants have directed their business activities at consumers in Pennsylvania via Amazon, Walmart, and Temu, through which consumers in Pennsylvania can view Defendants' online storefronts, communicate with Defendants regarding Defendants' Infringing Products, and place orders for, purchase, and receive delivery of Defendants' Infringing Products in Pennsylvania.

b. Defendants are sophisticated sellers on Amazon, Walmart, and Temu, each operating one or more commercial businesses through which Defendants operate online

storefronts to promote, advertise, distribute, offer for sale, and sell the Infringing Products imported into the United States.

c. Defendants (although foreign entities) accept payment in U.S. Dollars and offer shipping to Pennsylvania and this Judicial District (and calculate, charge, and remit tax based on sales into Pennsylvania and this Judicial District).

d. Upon information and belief, Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace operating in parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products embodying Plaintiff's copyrighted works, including: employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (*e.g.*, search engine optimization or "SEO"), in order to make their online storefronts appear more relevant and target a consumer searching for products embodying Plaintiff's copyrighted works. By their actions, in addition to the damages associated with unauthorized use of Plaintiff's copyrighted works, Defendants are causing concurrent and irreparable harm to Plaintiff and the consuming public by: (1) reducing the online visibility of Plaintiff's copyrighted works; (2) diluting and eroding the retail market price for Plaintiff's copyrighted works; (3) causing overall degradation of the value of goodwill associated with Plaintiff's copyrighted works; (4) devaluing the exclusivity that enhances the worth of Plaintiff's art and reputation; and (5) increasing Plaintiff's overall cost to market its goods and educate consumers about Plaintiff's copyrighted works.

e. Defendants are concurrently targeting their infringing activities toward consumers in, and causing harm in, Pennsylvania.

f. Defendants reside and/or operate in foreign jurisdictions with intellectual property enforcement systems and are cooperating by creating an illegal stream of infringing goods. (See, *e.g.*, https://sellerdefense.cn/). Defendants regularly remove and add products from their online storefronts, making it extremely difficult to enforce Plaintiff's intellectual property under the laws of the United States.

g. Upon information and belief, Defendants are aware of Plaintiff and Plaintiff's copyrighted works and are aware that their infringement is likely to cause harm to Plaintiff in the United States, Pennsylvania, and this Judicial District.

h. Plaintiff is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' unauthorized sale of the Infringing Products in direct competition with Plaintiff.

6. Alternatively, if Defendants contend that their use of Amazon, Walmart, and Temu should not be construed as contacts with the individual states and the Court accepts that contention, Federal Rule of Civil Procedure 4(k)(2) confers personal jurisdiction over Defendants because (1) the claims asserted herein arise under federal copyright law; (2) Defendants would not be subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution and laws. For example, exercising jurisdiction is constitutionally permissible because:

a. Defendants have purposefully directed their activities at the United States. The Defendants have voluntarily chosen to open accounts on Amazon, Walmart, and Temu to access the United States' market. Upon information and belief, Amazon, Walmart, and Temu target the entire United States, and do not provide sellers like Defendants with the ability to opt into or out of any particular jurisdiction (*e.g.*, state)

within the United States. Amazon, Walmart, and Temu, the online marketplaces chosen by Defendants: (1) provide prices in U.S. dollars; (2) advertise free shipping to U.S. buyers, including buyers in Pennsylvania, and (3) provide testimonials of and reviews by U.S. buyers.

b. Upon information and belief, Defendants have each had sales of the Infringing Products in the United States.

c. Plaintiff's injuries arise from Defendants' forum-related activities. Defendants' offer to sell, sale, and distribution of the Infringing Products to U.S. residents is a but for cause of all of the infringement alleged in this action. Defendants know or should know that infringement of works copyrighted by U.S. entities or persons is likely to injure U.S. residents.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391: Defendants do not reside in the United States and are subject to venue in any district. Further, Defendants solicit business from this Judicial District and, upon information and belief, conduct and transact significant business in this Judicial District.

## INTRODUCTION

8. Plaintiff, Cynthia Jo Jacobs, is the owner of several federal copyright registrations that protect the creative content of Plaintiff's images. The copyrights each protect one of many works of art by Cynthia Jo Jacobs, a painter and creator who loves to decorate homes, faux paint walls, make jewelry, and refinish or refurbish furniture and cabinetry. She is inspired by the fond recollections of growing up on the farm in Nebraska, consisting of long summer days and winter fun. The love of family, far, and her strong faith are reflected in the verses and images of her

artwork. Cynthia Jo Jacobs derives significant profits from the sale and distribution of art prints and licensed products.

9. This action has been filed by Plaintiff to combat online copyright infringers who trade upon Plaintiff's reputation, goodwill, and valuable copyrights by selling and/or offering for sale products in connection with Plaintiff's images. In addition, the Defendants are selling unauthorized products that are based on and derived from the copyrighted subject matter of Plaintiff's images.

10. Plaintiff is the owner of United States Copyright Registration Nos. VA 2-424-842 (Daisy Ball jars – original) and VA 2-424-839 (CIN1669 – Love Gathers Here) (Collectively, the "Cynthia Jo Jacobs Works"). These registrations are valid, subsisting, and in full force and effect. True and correct copies of the registration certificates for the Cynthia Jo Jacobs Works are attached hereto as **Exhibit 1**. Upon information and belief, the copyrights have effective dates that predate the Defendants' acts of copyright infringement.

11. In an effort to illegally profit from the creative content of The Cynthia Jo Jacobs Works, Defendants have created numerous Defendant Merchant Storefronts and designed them to appear to be selling authorized Cynthia Jo Jacobs Works.

12. The Defendant Merchant Storefronts share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation. Plaintiff is forced to file this action to combat Defendants' piracy of the Cynthia Jo Jacobs Works. Plaintiff has suffered, and continues to suffer, irreparable

harm due to the loss of control over the quality and creative content of her valuable copyrighted works, as well as damage to her reputation, goodwill, and ability to license as a result of Defendants' actions. Accordingly, Plaintiff seeks injunctive and monetary relief.

13. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken by Plaintiff because taking advantage of takedown procedures to remove infringing products would be an ineffective and endless game of whack-a-mole against the mass piracy that is occurring over the internet. Sadly, a swarm of infringers have decided to trade upon Plaintiff's reputation, goodwill, and valuable copyrights by selling and/or offering for sale products in connection with Plaintiff's images. The aggregated effect of the mass piracy that is taking place has overwhelmed Plaintiff and Plaintiff's ability to police Plaintiff's rights against the dozens of anonymous defendants who are selling illegal infringing products at prices well below an original.

14. To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's recent report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks. **The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.**
>
> . . .

> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.
>
> . . .
>
> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination**, making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.

*See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19 (emphasis added) attached hereto as **Exhibit 2**.

15. The Defendant Merchant Storefronts share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities:

> The scale of counterfeit activity online is evidenced as well by the significant efforts e-commerce platforms themselves have had to undertake. A major e-commerce platform reports that its proactive efforts prevented over 1 million suspected bad actors from publishing a single product for sale through its platform and blocked over 3 billion suspected counterfeit listings from being published to their marketplace. Despite efforts such as these, private sector actions have not been sufficient to prevent the importation and sale of a wide variety and large volume of counterfeit and pirated goods to the American public.
>
> . . .
>
> A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-

> party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked. On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.
>
> . . .
>
> Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id.* at 5, 11, 12.

16. Plaintiff has been and continues to be irreparably harmed through the loss of control over Plaintiff's reputation, goodwill, ability to license, and the quality of goods featuring the Cynthia Jo Jacobs Works, as well as the devaluation of the exclusivity associated with Plaintiff's art and professional reputation. The rise of eCommerce as a method of supplying goods to the public exposes brand holders and content creators that make significant investments in their products to significant harm from counterfeiters:

> Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organization for Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.
>
> …
>
> The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.
>
> . . .

> Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.
>
> . . .
>
> Counterfeiters have taken full advantage of the aura of authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.

*See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit 2)** at 4, 8, 11.

17. Not only are the creators and copyright owners harmed, the public is harmed as well:

> The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers. The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade that is inflicting significant harm on American consumers and businesses. This illicit trade must be stopped in its tracks.

*Id.* at 3, 4. (Underlining in original).

18. Plaintiff's investigation shows that the telltale signs of an illegal piracy ring are present in the instant action. The Defendant Merchant Storefronts share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal piracy operation. Plaintiff is forced to file this action to combat Defendants' infringement of

the Cynthia Jo Jacobs Works, as well as to protect unknowing consumers from purchasing unauthorized reproductions of the Cynthia Jo Jacobs Works over the internet.

## THE PLAINTIFF

19. Plaintiff, Cynthia Jo Jacobs, is the owner of the Copyright Registrations that protect the Cynthia Jo Jacobs Works. Cynthia Jo Jacobs is a painter and creator who loves to decorate homes, faux paint walls, make jewelry, and refinish or refurbish furniture and cabinetry. She is proficient in photography, watercolors, acrylics, pen and ink, and three-dimensional paintings with plaster, metal, and wood.

20. Cynthia Jo Jacobs is inspired by her fond recollections of growing up on the farm in Nebraska consisting of long summer days and winter fun. Her love of family, farm, and strong faith are reflected in the verses and images of her artwork. Her published prints and licensed products are very popular among consumers thus establishing a high value for the license to use her works.

21. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting her art, including the Cynthia Jo Jacobs Works. Plaintiff has also invested substantial time, money, and effort in building up and developing consumer awareness, goodwill, and recognition in the Cynthia Jo Jacobs Works. As a result, reproductions associated with Cynthia Jo Jacobs Works are recognized and exclusively associated by consumers, collectors, the public, and the trade as works authorized by Plaintiff.

22. The success of the Cynthia Jo Jacobs Works is due in large part to Plaintiff's marketing, promotional, and distribution efforts.

23. As a result of Plaintiff's efforts, the quality of authorized reproductions, the promotional efforts for Plaintiff's products and designs, press and media coverage, and social media

coverage, members of the public have become familiar with The Cynthia Jo Jacobs Works and associate them exclusively with Plaintiff.

24. Plaintiff has made efforts to protect Plaintiff's interests in and to the Cynthia Jo Jacobs Works. No one other than Plaintiff and Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the Cynthia Jo Jacobs Works image without the express written permission of Plaintiff.

## THE DEFENDANTS

25. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Pennsylvania and in this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Merchant Storefronts. Each Defendant targets the United States, including Pennsylvania, and has offered to sell and, on information and belief, has sold and continues to sell illegal reproductions of the Cynthia Jo Jacobs Works to consumers within the United States, including Pennsylvania and in this judicial district.

## THE DEFENDANTS' UNLAWFUL CONDUCT

26. The success of the Cynthia Jo Jacobs Works has resulted in significant copying of the creative content protected by Plaintiff's copyright registrations. Plaintiff has identified numerous fully interactive marketplace listings on Amazon, Walmart, and Temu. Each Defendant targets consumers in the United States, including the Commonwealth of Pennsylvania, and has offered to sell and, on information and belief, has sold and continues to sell infringing products that violate Plaintiff's intellectual property rights in the Cynthia Jo Jacobs Works to consumers within the United States, including the Commonwealth of Pennsylvania.

27. Upon information and belief, Defendants facilitate sales by designing the Defendant Merchant Storefronts so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine reproductions of the Cynthia Jo Jacobs Works.

28. The Defendant Merchant Storefronts intentionally conceal their identities and the full scope of their piracy operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Through their operation of the Defendant Merchant Storefronts, Defendants are directly and personally contributing to, inducing, and engaging in the sale of Infringing Products as alleged, often times as partners, co-conspirators, and/or suppliers. Upon information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

29. Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the Cynthia Jo Jacobs Works, including Plaintiff's exclusive right to use and license such intellectual property and the goodwill associated therewith.

30. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Defendant Merchant Storefronts. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on Amazon, Walmart, and Temu using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their

identities, the full scope and interworking of their massive pirating operation, and to avoid being shut down.

31. The Infringing Products for sale in the Defendant Merchant Storefronts bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

32. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2021 U.S. Customs and Border Protection report on seizure statistics indicated that e-commerce sales accounted for 13.3% of total retail sales with second quarter of 2021 retail e-commerce sales estimated at $222.5 billion. U.S. Customs and Border Protection, *Intellectual Property Right Seizure Statistics*, FY 2021 (https://www.cbp.gov/sites/default/files/assets/documents/2022-Sep/202994%20-%20FY%202021%20IPR%20Seizure%20Statistics%20BOOK.5%20-%20FINAL%20%28508%29.pdf) at 23. A true and correct copy of CBP's FY 2021 report is attached hereto as **Exhibit 3**. In FY 2021, there were 213 million express mail shipments and 94 million international mail shipments. *Id.* Nearly 90 percent of all intellectual property seizures occur in the international mail and express environments. *Id.* at 27. The "overwhelming volume of small packages also makes CBP's ability to identify and interdict high risk packages difficult." *Id.* at 23.

33. Further, infringers such as Defendants, typically operate multiple credit card merchant accounts and third-party accounts, such as PayPal, Inc. ("PayPal") accounts, behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts, such as China-based bank accounts, outside the jurisdiction of this Court.

34. Defendants, without any authorization or license, have knowingly and willfully pirated Plaintiff's Cynthia Jo Jacobs Works copyrights in connection with the advertisement, distribution, offering for sale, and sale of illegal products into the United States and Pennsylvania over the internet. Each Defendant Internet Store offers shipping to the United States, including Pennsylvania, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including Pennsylvania.

35. Each Defendant was, and is currently, offering for sale and selling the Infringing Products to the consuming public via Defendants' online storefronts using their Seller IDs. Defendants provide shipping, have actually shipped, and/or stand ready, willing, and able to ship the Infringing Products to customers located within this Judicial District.

## COUNT I
## COPYRIGHT INFRINGEMENT

36. Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

37. The Cynthia Jo Jacobs Works and authorized reproductions have significant value and have been produced and created at considerable expense.

38. At all relevant times, Plaintiff has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to The Cynthia Jo Jacobs Works, including derivative works. The Cynthia Jo Jacobs Works are the subject of valid Copyright Registration Certificates issued by the Register of Copyrights. (**Exhibit 1**).

39. Each Defendant, without the permission or consent of Plaintiff, has sold and continues to sell online pirated derivative works of the copyrighted Cynthia Jo Jacobs Works. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

40. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

41. As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to Plaintiff's attorneys' fees and costs pursuant to 17 U.S.C. §505.

42. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyrights and ordering that each Defendant destroy all unauthorized copies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. Using The Cynthia Jo Jacobs Works or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized reproduction of the Cynthia Jo Jacobs Works or is not authorized by Plaintiff to be sold in connection with Cynthia Jo Jacobs Works;

b. passing off, inducing, or enabling others to sell or pass off any product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Cynthia Jo Jacobs Works;

c. further infringing the Cynthia Jo Jacobs Works and damaging Plaintiff's goodwill;

d. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which directly use the Cynthia Jo Jacobs Works images, and which are derived from Plaintiff's copyrights in the Cynthia Jo Jacobs Works; and

e. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Merchant Storefronts, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which are derived from Plaintiff's copyrights in the Cynthia Jo Jacobs Works;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Merchant Storefronts, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which reproduce the Cynthia Jo Jacobs Works or are derived from the Cynthia Jo Jacobs Works, including any accounts associated with the Defendants listed on Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which are derived from the Cynthia Jo Jacobs Works; and

c. take all steps necessary to prevent links to the Defendant accounts identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant accounts from any search index;

3) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in Plaintiff's federally registered copyrights pursuant to 17 U.S.C. §501; and b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

4) For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. §504, at the election of Plaintiff, in an amount to be determined at trial;

5) That Plaintiff be awarded Plaintiff's reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Respectfully submitted,

Dated: August 6, 2025

/s/ Stanley D. Ference III

Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 - Telephone
(412) 741-9292 - Facsimile

Attorneys for Plaintiff

# Schedule "A"

# Defendants with Store Name and Seller ID

| Defendant Number | Store/Seller Name | Seller ID |
|---|---|---|
| 1 | HeBiBaoYueJianCaiYouXianGongSi | A35KBK7WJNMWIF |
| 2 | zhengzhounuanjingshangmaoyouxiangongsi | A1I4TS14T6NDSU |
| 3 | Sole proprietorship of Chenghan Trading Company in Fusui County | A370X5NSEF9K |
| 4 | cuenong | A19KR4GHXNHWZ4 |
| 5 | ZL-WALLART | A1O8HPHFSUQE3 |
| 6 | Norcords | A2V304P7KZ7IDP |
| 7 | Vinwy | A3RF9PFHR4MCFF |
| 8 | beijingyipintangshangmaoyouxiangongsi | A114FQTCHM6S2D |
| 9 | wqybcv | A3FP0342KFIHWU |
| 10 | anqingrongzhongshangmaoshanghang(gerenduzi) | A1O3ENX2XO1FM1 |
| 11 | HaErBinQiaoShaXiuShangMaoYouXianGongSi | ATJYWF0691VSR |
| 12 | tongyujiashangmaoyouxiangongsi | A3NR932L4RNP4V |
| 13 | XiangYanShangMao | A2VYTFCZF12PMB |
| 14 | haiyangyuxiangshuichanyouxiangongsi | A3PYAEOMCIK1SF |
| 15 | LuoXiaoLong81 | A17GXSZ1XMIHWL |
| 16 | JingYingWangLuoKeJiZhongXin | A3EEJXOSBHE8TG |
| 17 | runnasm | A1AS00TMRJXPJL |
| 18 | LinYuanLvHuaGongCheng | AJH5J66GC4LK1 |
| 19 | CengBo875 | A1OOLT1IPW122H |
| 20 | jinbolulin | A1ELXP56T5PA2 |
| 21 | zhijiangshipiaoxuegebaihuodian | A1OT5ASEJ729GF |
| 22 | BOHAOTECH | A1BVTJXVN5UVH8 |
| 23 | SONGHENG | A146ZNAGL9KLAW |
| 24 | NANHAO | A3TS8NHXUA2430 |
| 25 | Amagical | A3VSSP5RVSF3AV |
| 26 | chenwebbindexiaodian | ATWBQS8SEYYZT |
| 27 | Xiao yong shangmao | A34SRIDWFHCT54 |
| 28 | Dazaro Store | A3BUN7UY9TMH9N |
| 29 | Xulight | AL3AWHW779XCQ |
| 30 | henggg | A2X1PC22NT8ENO |
| 31 | ZhangTingGang63 | A1NU3SHCMH4Q78 |
| 32 | wangjiefeimaoshangwen33 | A3DX086OOYJGOK |
| 33 | sunhaodongmaixigua | A2FJHYJ263ZC75 |
| 34 | lirendexiaodian | A1TMHS7YQ8UV |
| 35 | TOPSIN ONLINE | A238YE3NZ9Q5V2 |
| 36 | ningguochengbobowangluokejizhongxingerenduzi | A2J7QHS7T13FX0 |
| 37 | xixianxinquqinhanxinchengleihuayubaihuodian | A28JI8M482HTJ5 |
| 38 | chuzhoushihushaobodianzishangwushanghang | A22SJ9KI0INTR7 |

| | | |
|---|---|---|
| 39 | KMNOVO | A1L0X5UIEDPFEB |
| 40 | Typruye | A2W9HLKMWOIT0I |
| 41 | quangquang145 | A20S7UUOW4B2JN |
| 42 | GuangZhouXiaoTuoShangMao | A14Y8AUUUFURVI |
| 43 | OHZOLLAN | A1CSEM1V4U9CVK |
| 44 | YuYaoHouseholdPaper | 101650873 |
| 45 | Tapesb | 101115442 |
| 46 | Custom Art Global Store | 101178187 |
| 47 | xihuangmaoyi | 101660478 |
| 48 | Hou YuLongWireless | 102501509 |
| 49 | PanKo Shop | 101204937 |
| 50 | dingqiangMY21 | 101692067 |
| 51 | WeiweiCameras | 101651855 |
| 52 | jinancheyunlinkejizixun | 101676686 |
| 53 | Shuoyu Co. ltd | 101517865 |
| 54 | BenYang toys store | 102486697 |
| 55 | hefeigailingdianzishangwu | 101631002 |
| 56 | YUTING | 101636363 |
| 57 | PERCIOUS HOME | 101633466 |
| 58 | dicilly home supplies | 101629814 |
| 59 | One alkyne | 634418217694506 |
| 60 | Shining Showroom | 634418216340421 |
| 61 | Shangmum ART | 634418219744192 |
| 62 | AnjuA ART | 634418219630063 |
| 63 | Nordingshan Art | 634418219547769 |
| 64 | CANVASARTT | 634418216023103 |
| 65 | Beautiful canvas painting shop | 634418219429422 |
| 66 | WAWAW | 634418219353978 |
| 67 | HongQJ Wall Art | 634418219147379 |
| 68 | PL wall art | 634418217010670 |
| 69 | JJJ Wall Decor | 634418218201678 |
| 70 | LENG wall art | 634418218796249 |
| 71 | Oct Wall Art | 634418219015250 |
| 72 | YANZI WALL ART | 634418216890873 |
| 73 | AI ART DECOR | 634418218356515 |
| 74 | Canvastique | 634418218762225 |
| 75 | Gruwans Home | 634418211850203 |
| 76 | DuoFu Seller | 634418211973958 |
| 77 | DANIFY | 634418217210163 |
| 78 | Chic Artworks | 634418216469653 |
| 79 | XUKAIJIEART | 634418217484966 |
| 80 | Funny Home Decor Gift | 634418216380250 |
| 81 | Qinglong Art Poster s | 634418220025104 |
| 82 | jiejieposter | 634418220356502 |
| 83 | GQQ Decorative paintings and posters | 634418219889337 |

| | | |
|---|---|---|
| 84 | XHY Decorative paintings and posters | 634418219906822 |
| 85 | WWM Decorative Painting Poster | 634418219874035 |
| 86 | TQTX Decor | 634418219064989 |
| 87 | Xinmi imp | 2843995855990 |
| 88 | Mera Decoration | 634418211771434 |
| 89 | homepart | 634418219127037 |
| 90 | GG Warm Home | 634418214138660 |
| 91 | zsrxmf | 634418216422142 |
| 92 | cendiy | 634418216586852 |
| 93 | CreativeHaven | 634418218338679 |
| 94 | Tulip Vibes | 634418210052419 |
| 95 | Awesome Selection - LOVE HQ | 817177281065 |
| 96 | Do ZZH | 634418214013421 |
| 97 | ZhanS Home textiles local | 634418215299873 |
| 98 | ZJYWCJA | 634418214523907 |
| 99 | Maiqi Home Decoration | 634418219149407 |
| 100 | meetoo studio | 4717818698684 |
| 101 | Nais Home Textile | 634418215214102 |
| 102 | ZhiH Home textiles local | 634418216014783 |
| 103 | SJONE | 634418211253400 |
| 104 | Laizongshop | 5802799285269 |
| 105 | HuLY | 634418218341963 |
| 106 | Tin Sign Painting | 634418218771315 |
| 107 | lin Decorative Painting three | 634418217208137 |
| 108 | MetallicMemories | 634418217322572 |
| 109 | ModernLife | 634418212526814 |
| 110 | Cozy Mat House | 634418217955965 |
| 111 | OPENNESS | 634418217152144 |
| 112 | HOME LIFE FOR U | 634418216017408 |
| 113 | Honey Home Pillow | 634418209625638 |
| 114 | Lovely Mu | 634418212530820 |
| 115 | QISHANS DREAM | 634418220189719 |
| 116 | Happiness xiaohetao | 634418220198709 |
| 117 | ShengGeJiaJu | 2985434820362 |
| 118 | Hongxia shop | 634418216848349 |
| 119 | Rykebella | 634418218264982 |
| 120 | Little Yellow Duck Life House | 634418218637405 |
| 121 | lovette Home | 5060391878354 |
| 122 | XuanYiYunChuang | 634418219142867 |
| 123 | Metal Sketch Gallery | 634418219318227 |
| 124 | Framed Canvas | 634418211992025 |
| 125 | ageoo | 634418213605385 |
| 126 | Tin Treasures Gallery | 634418217957106 |
| 127 | Artical Zoo | 634418217255897 |
| 128 | Family Aritist | 634418218734239 |

| | | |
|---|---|---|
| 129 | Hemingtonge | 634418219366298 |
| 130 | asdfdsg | 634418219101652 |
| 131 | Wall Decor Canvas Poster | 634418219393529 |
| 132 | XZ ART SHOP | 634418218218819 |
| 133 | Golden Retrieve | 634418216271155 |
| 134 | Honglong cultural I | 634418216996900 |
| 135 | ManHe fa | 634418214603770 |
| 136 | HD ART SHOP | 634418219081116 |
| 137 | SuSu Art Shop | 634418218263026 |
| 138 | kadingg | 634418219018124 |
| 139 | huiyaing | 634418219035750 |
| 140 | painting studio suxx | 634418217852200 |
| 141 | Poising | 634418216130508 |
| 142 | KarinaGarden | 634418217883741 |
| 143 | BJGardenDecor | 634418215312047 |
| 144 | Hundred Caotuan herbal | 1576622069860 |
| 145 | HolidayGardenDecor | 634418216571711 |
| 146 | American style curtain | 634418215243625 |
| 147 | Hanshe Home life | 634418214121811 |
| 148 | daily necessities | 32699404507 |
| 149 | nokes | 634418212681925 |
| 150 | Yisheng Home Life Museum | 277003237186 |